Mark R. Vermeulen [CSBN 115381]
Law Office of Mark R. Vermeulen
755 Florida Street  #4
San Francisco, CA  94110.2044
Phone: 415.824.7533
Fax: 415.824.4833

Attorney for Defendant
BERNADETTE ESCUE

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>BERNADETTE ESCUE,<br><br>　　　　Defendant. | No. CR 07-00610 JF<br><br>**DEFENDANT'S MEMORANDUM RE: RESTITUTION, WITH CONDITIONAL REQUEST FOR EVIDENTIARY HEARING**<br><br>Date:  September 3, 2008<br>Time:  9:00 a.m. |

## INTRODUCTION

The Court previously sentenced Defendant Bernadette Escue to one year and one day in prison following her plea to a violation of 18 U.S.C. § 1343, based on her having charged personal expenses to her employer's corporate credit card accounts. At the sentencing hearing, the Court reserved the issue of restitution (due to the late submission of a claim for restitution by Network Appliance, Inc. ("Network") and Huron Consulting Group ("Huron") and defense counsel's objections thereto), and set a hearing. Ms. Escue, through counsel, submits this memorandum in connection with the determination of restitution.

As noted at the initial sentencing hearing, Ms. Escue does not contest the loss amount of $90,297.53.[1]  She does, however, strenuously object to the excessive claim submitted very late in the

---

[1] As to the loss amount, the issue of offset arises, as Network was reimbursed $40,297.53 by its insurance company. PSR at ¶ 16. While insurance payments are excluded from the initial computation of the amount of restitution owed, once that total amount is determined, the defendant is entitled to have

-1-

DEFENDANT'S MEMORANDUM RE: RESTITUTION

process – and with inadequate documentation – by Network and Huron, which seeks $126,684.00 in fees and costs they contend necessarily were incurred in order to determine that the loss was $90,297.53. This claim is grossly excessive, unreasonable, and lacking in documentation that is standard in the industry (and in business in general). Restitution in the amount of $10,000.00 should be ordered for this component. This is the amount specified as the maximum for such services in the applicable insurance policy, it is an amount that is typical in the industry for investigations such as this, and it is fair compensation for the type of investigation necessary to determine the loss in a case such as this. Should the Court be inclined to order restitution in excess of $10,000.00 for this component, Ms. Escue requests an evidentiary hearing so that the basis for this claim may be examined more fully by the Court.

## DISCUSSION

**I.    Procedural History Re: Restitution**

    **A.    The Very Late Claim Submitted On Behalf of Network and Huron**

From the time this case broke in 2004, the Government, Network and Huron stated consistently that restitution amounted to less than or very near $100,000.00. In 2003/2004, Network hired Huron to audit Ms. Escue's expenses when the fraudulent charges came to light. In 2004, Network and Huron produced to the Government and defense counsel a report detailing Huron's findings. As noted in the report, the amounts at issue ranged from a possible low of $88,163.00 to a possible high of $112,259.00 (with the latter estimates proving to be inaccurate, as they included duplicative and inapplicable items). The claim submitted by Network to its insurer totaled $90,297.53, for which Network was paid $40,297.53 by its insurer (after subtracting the $50,000.00 deductible). *See* Exhibit A (letter dated August 6, 2004 from Chubb Group of Insurance Companies to U.S. Attorney's Office, and the *Release and Assignment* dated July 26, 2004).

In early March 2008, in connection with finalizing the Presentence Report, the parties and the probation officer undertook further discussions and communications regarding the determination of restitution. The probation officer (working from information provided by the AUSA and his agents, whose sources were Network and Huron) stated initially that she believed that $95,619.21 was the appropriate figure, and defense counsel noted that he believed that $90,297.53 was applicable, given the

---

the amount of restitution reduced by any amount recovered by the victim as compensation for the same loss. *United States v. Crawford*, 169 F.3d 590, 593 (9th Cir. 1999), citing and discussing 18 U.S.C. § 3664(f)(1)(B) & (j)(2) (approving concept of offset; no offset allowed in *Crawford* because there was no evidence establishing that the insurance proceeds received by the victim's family were intended to compensate for "the same loss" (i.e., funeral expenses, which were the basis for the court ordered restitution)).

-2-

DEFENDANT'S MEMORANDUM RE: RESTITUTION

documentation. *See* Exhibit B (March 3, 2008 e-mail communications between defense counsel, the AUSA and the probation officer, addressing restitution). The AUSA referred to documents that indicated that restitution may be as high as the $95,619.21 figure, and indicated that he would take a look at the documents to determine his position. *Id.* He did not respond further; nor did the probation officer.

When the PSR was finalized and issued in April 2008, it confirmed that $90,297.53 was the loss. PSR at ¶ 16. However, it also included a proposal, stated for the first time anywhere, that additional restitution of $126,684.00 be paid to Network for Huron's work in drafting the report in 2004. PSR at ¶¶ 16-17. Never before had this additional proposed restitution been mentioned or alluded to by anyone.

**B.     The Initial Sentencing Hearing, And Further Proceedings Re: Restitution**

At the initial sentencing hearing, the Court imposed the prison sentence, set a surrender date, and directed that issues concerning restitution be addressed at a further hearing, setting a July 16, 2008 hearing date. Defense counsel applied for and received an order issuing subpoenas duces tecum to Network and Huron seeking documentation for the $126,684.00 claim. *See* Doc. 43 (*Order for Issuance of Subpoenas Duces Tecum*). The subpoenas directed Network and Huron to provide all documents and records that provided support for the claimed charges (including timesheets), a detailed description of the tasks and work performed by each Huron employee, all engagement letters and communications between Network and Huron (including the scope of work), and all supporting documentation related to expenses incurred. *See* Doc. 43; *see also* Doc. 40 (subpoenas duces tecum).

Counsel served the subpoenas on Network and Huron in early July 2008. At the request of each, counsel extended to late July the time within which compliance with the subpoenas was required, and consequently moved the Court to continue the restitution hearing, which the Court did, re-setting the hearing for September 3, 2008. *See* Docs. 41, 45.

/ / /

/ / /

/ / /

-3-

DEFENDANT'S MEMORANDUM RE: RESTITUTION

## II. Analysis / Argument

### A. Overview

In response to the subpoena, Huron provided some documents to counsel, the AUSA and the probation officer.[2] As discussed below and in the accompanying declaration of Dixon Grier, a C.P.A. and a partner at Matson, Driscoll & Damico,[3] the documents fail to properly and reliably document the hours worked and the work performed by Huron, the documents do not contain basic information typically included in the industry, and the billings of $126,684.00 are significantly excessive for a case involving unsophisticated employee activity with a loss of $90,297.53. Huron's claim should be limited to $10,000.00, which is fair and reasonable for the work necessary to determine the loss in this case.

### B. Basic Tenets Applicable To Determining Restitution

The Mandatory Victim Restitution Act provides the initial framework for the Court's restitution determination:

> The order of restitution shall require that such defendant -- ... in any case, reimburse the victim for lost income and *necessary* child care, transportation, and other expenses incurred during participation in the investigation or prosecution of the offense or attendance at proceedings related to the offense.

18 U.S.C. § 3663A(b)(4) (emphasis added).

The Ninth Circuit has set forth basic principles applicable to the restitution determination. In *United States v. Gordon*, 393 F.3d 1044 (9th Cir. 2004) (with which this Court is intimately aware), the Circuit stated:

> This circuit has adopted a *broad* view of the restitution authorization for investigation costs. Generally, investigation costs - including attorneys' fees - incurred by private parties as a direct and foreseeable result of the defendant's wrongful conduct may be recoverable.

*Id.* at 1056-57 (citations, quotation marks and brackets omitted; emphasis in original). In *United States*

---

[2] In response to the same subpoena, Network provided documentation that is more limited, consisting of its payments to Huron and Huron's two letter invoices reflecting simply the names of the persons at Huron who worked on the audit, the total hours each person worked, the fees for each person, and the total claimed due. Network provided no further documentation, and no documentation at all of any engagement letter(s), nor of the scope of work to be performed by Huron.

[3] As set forth in Mr. Grier's declaration, Matson, Driscoll & Damico is a forensic Certified Public Accounting Limited Liability Partnership. Mr. Grier was retained by C.J.A.-appointed counsel, with the Court's authorization, in connection with these restitution proceedings.

-4-

DEFENDANT'S MEMORANDUM RE: RESTITUTION

*v. Barany*, 884 F.2d 1255 (9th Cir. 1989), the Circuit made clear that limits apply to this determination:

> However, the court's discretion in ordering restitution is not unlimited. ... In determining the appropriate amount of restitution, the district court should not accept uncritically an amount recommended by the probation office. ... It would be an abdication of judicial responsibility simply to adopt a suggested figure without making an independent determination that the amount actually reflects the damages suffered by the victim.

*Id.* at 1260-61; *see also* S. Rep. No. 104-179, at 19 (1995), *reprinted in* 1996 U.S.C.C.A.N. 924, 932 ("The committee believes that losses in which the amount of the victim's losses are speculative, or in which the victim's loss is not clearly causally linked to the offense, should not be subject to mandatory restitution.").

"The burden of demonstrating the amount of the loss sustained by a victim as a result of the offense shall be on the attorney for the Government." 18 U.S.C. § 3664(e).

### C.    Huron's Claim Could Be Denied In Its Entirety, Given Its Untimeliness

The Court properly could deny Huron's claim in its entirety based on the extreme lateness of its submission. Title 18 U.S.C. § 3664(d)(1) states:

> Upon the request of the probation officer, but not later than 60 days prior to the date initially set for sentencing, the attorney for the Government, after consulting, to the extent practicable, with all identified victims, shall promptly provide the probation officer with a listing of the amounts subject to restitution.

Here, the only amount subject to restitution submitted in compliance with the statute was Network's claim for $90,297.53. This is so, despite the fact that the Government has been working closely with Network and Huron since 2004 and despite the fact that the probation officer also had been in contact with Network and Huron through the PSR drafting process. The $126,284.00 claim could be denied on this basis alone.

### D.    If Huron's Claim Is Not Denied, It Should Be Limited To $10,000.00

Realistically, counsel for Ms. Escue understands that it is unlikely that the Court will deny Huron's claim in its entirety. The claim should, however, be scrutinized closely and thoroughly given its very late submission, given its lack of basic, standard documentation, and given that the claimed charges are wholly disproportionate to the nature and extent of the loss involved here.

Dixon Grier of Matson, Driscoll & Damico is experienced with and well-versed in forensic accounting issues such as those present in this case. *See* accompanying *Declaration of Dixon Grier, C.P.A., Re: Restitution Claim of Huron Consulting Group*, including his CV attached thereto as Exhibit A. He has reviewed the documents submitted by Network and Huron. *Id.* at 3, ¶ 3. Among the

deficiencies and issues presented by the documents are the following:

- It is (and has been) standard practice for public accounting firms, law firms, and consulting firms to bill time by the hour or increments thereof, with proper billings including a record of individual time spent and a description of the activities being billed. Huron did not produce such billing records. *Id.* at 2, ¶¶ 4-5.

- It is standard practice in the industry to retain these detailed billing records for a period of at least seven years, as they are an integral part of the file that is maintained on each job. While the report written by Huron is well within this time period, Huron did not produce such records. *Id.* at 2, ¶¶ 5-7.

- Mr. Grier has performed a number of analyses of employee dishonesty / fidelity losses. In most instances these billings relate to evaluations of employee dishonesty / fidelity for which his firm measured losses exceeding $100,000.00, and for which the time periods of employee dishonesty exceeded a year, and often were for 2 or 3 years, similar to that involved in this case. The majority of these billings have been in the range of $5,000.00 to $15,000.00 *Id.* at p. 2, ¶ 8.

Mr. Grier concludes as follows:

> From the information provided by Huron Consulting Group it is not possible to determine reliably and conclusively the work and the reasonableness of the work undertaken by them to calculate the employee fidelity loss; however, based on my and Matson, Driscoll & Damico's experience in the industry and in evaluating such claims, the billings of $126,684 appear significantly excessive for this employee fidelity loss of $90,297.53.

*Id.* at 3, ¶ 10.

Based on the information before the Court, it is clear that Huron's claim is poorly documented, excessive and unreasonable. It should be denied. *See, e.g., United States v. Brock-Davis,* 504 F.3d 991 (9th Cir. 2007) (restitution may not include work submitted in lump-sum bill to the court); *F.H. Krear & Co. v. Nineteen Named Trustees*, 810 F.2d 1250, 1265 (2d Cir. 1987) (holding attorney's time records "did not contain sufficient detail" where attorney "described his activities in no more than two or three words for any given day, such as 'Rev. Docs' or 'Clients re testimony.'"). If Huron's claim is approved, it should be limited to $10,000.00, which is appropriate and in line with cases presenting unsophisticated factual situations, such as this one.[4]

///

---

[4] If the Government contends that this was a sophisticated or elaborate scheme, or if the Government argues that Mr. Grier's observations and conclusions are subject to challenge because they are not based on a full review of the records and information involved in Huron's work, those records and information must be produced so that Mr. Grier and counsel for Ms. Escue fairly may respond.

-6-

DEFENDANT'S MEMORANDUM RE: RESTITUTION

### E. As Directed By The Relevant Statutes, Ms. Escue's Lack Of Financial Resources, Both In The Present And In Any Realistic Projected Future, Impacts The Terms Of The Restitution Order

Once the Court determines the amount of restitution (which is done without consideration of the defendant's economic circumstances, *see* 18 U.S.C. § 3664(f)(1)), the restitution order must be fashioned. In this regard, section 3664(f)(2) specifies that the defendant's financial resources and projected earnings must be considered in establishing the manner of payment and the payment schedule:

> Upon determination of the amount of restitution owed to each victim, the court shall, pursuant to section 3572, specify in the restitution order the manner in which, and the schedule according to which, the restitution is to be paid, in consideration of--
> (A) the financial resources and other assets of the defendant, including whether any of these assets are jointly controlled;
> (B) projected earnings and other income of the defendant; and
> (C) any financial obligations of the defendant; including obligations to dependents.

Section 3664(f)(3)(B) also is particularly significant in the present case:

> A restitution order may direct the defendant to make nominal periodic payments if the court finds from facts on the record that the economic circumstances of the defendant do not allow the payment of any amount of a restitution order, and do not allow for the payment of the full amount of a restitution order in the foreseeable future under any reasonable schedule of payments.[5]

As made clear in the PSR's review of Ms. Escue's financial situation (*see* PSR at pp. 11-14, ¶¶ 59-67), her economic circumstances do not allow for the payment of the full amount of restitution (even if limited to the established $90,297.53 loss) now or in the foreseeable future, particularly given Ms. Escue's lack of employability as a result of this conviction and the various press releases the U.S. Attorney's Office has issued throughout these proceedings. A restitution order directing nominal periodic payments is provided for expressly and is appropriate under the statutes.

/ / /

/ / /

/ / /

---

[5] These principles are reiterated in U.S.S.G. § 5E1.1(f) (2002), which states:
> A restitution order may direct the defendant to make nominal periodic payments if the court finds from facts on the record that the economic circumstances of the defendant do not allow the payment of any amount of a restitution order and do not allow for the payment of the full amount of a restitution order in the foreseeable future under any reasonable schedule of payments.

-7-
DEFENDANT'S MEMORANDUM RE: RESTITUTION

**CONCLUSION**

Restitution for the loss amount of $90,297.53 should be ordered, with an offset of $40,297.53 (representing the amount Network was reimbursed by its insurer).

The $126,684.00 in fees and costs sought by Huron should not be approved. This claim is unreasonable and grossly disproportionate to the loss and the type of illegal activity present in this case. The manner and timing by which Huron has presented its claim to this Court is exceedingly dilatory at best and do not comply with the restitution statutes. The documentation provided falls far short of basic documentation that is standard in the industry. Huron's claim should be denied. If the Court is inclined to approve the claim, restitution for Huron's work fairly and reasonably should be set at $10,000.00. If the Court is inclined to order restitution at a higher level, an evidentiary hearing should be held.

Finally, the restitution order should direct that Ms. Escue make nominal periodic payments, based on the criteria set forth in 18 U.S.C. § 3664(f).

Dated: August 27, 2008                                   Respectfully submitted,


                                                         /S/
                                                         Mark R. Vermeulen
                                                         Attorney for Defendant
                                                         BERNADETTE ESCUE